IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ARCHANGEL HOME SECURITY, LLC, § § § | | |
| Plaintiff, § § | | |
| v. § | Civil Action No. 3:11-CV-3134-N | |
| § | | |
| ABSOLUTE SECURITY PRODUCTS, INC., DONALD L. FREUDENBERG, and AUBREY L. CANERDY, JR., § § § § | | |
| Defendants. § | | |

# ORDER

This Order addresses Defendants' motion to dismiss [10].[1]  Because the Court does not have personal jurisdiction over any defendant, the Court grants the motion.

## I. ARCHANGEL'S PATENT DISPUTE WITH DEFENDANTS

Plaintiff Archangel Home Security, LLC ("ArchAngel") seeks declaratory judgment that it does not infringe U.S. Patent No. 7,946,635 (the "'635 Patent"). The '635 Patent, invented and owned by Defendant Aubrey L. Canerdy, Jr., relates to a device that structurally reinforces door jambs. Defendant Absolute Security Products ("Absolute") is a Tennessee corporation that manufactures, distributes, and sells a product called the "Jamb Enforcer" that practices the '635 Patent. Defendant Donald L. Freudenberg is Absolute's owner and operator.

---

[1] Defendants move in the alternative for a transfer of venue. Because the Court grants the motion to dismiss on personal jurisdiction grounds, it does not reach the venue question.

Absolute sells the Jamb Enforcer to several dealers and directly to consumers. The dealers include H.L. Flake, a locksmith equipment distributor in Houston and the only Jamb Enforcer distributor in Texas. Absolute has sent five shipments of Jamb Enforcers to H.L. Flake over the past two years. Defendants have no ongoing contractual agreement or licensing arrangement with H.L. Flake, and Defendants do not own or operate H.L. Flake in any respect. Through its website, Absolute has also sold the Jamb Enforcer to "a few other end users" in Texas. No more than five percent of Absolute's business involves sales to H.L. Flake and the other Texas buyers.

Plaintiff ArchAngel also manufactures a device, the "Door Devil," that reinforces door jambs. Absolute, through Freudenberg, sent a letter to an ArchAngel representative asserting that the Door Devil infringes the '635 Patent. The parties thereafter unsuccessfully attempted to negotiate a business arrangement that would settle their dispute, under which ArchAngel would take a license under the '635 Patent, purchase products from Absolute, and sell the products in Texas and elsewhere. In the course of the negotiations, Freudenberg, representing Absolute, emailed ArchAngel's owner, who lives in Texas. Absolute also sent a cease-and-desist letter to a Rhode Island company that was selling Door Devils.[2] ArchAngel asserts that Absolute and Freudenberg acted as Canerdy's agents when Absolute, through Freudenberg, alleged that ArchAngel infringed the '635 Patent and when

---

[2]ArchAngel asserts that Absolute attempted to "frighten customers away from purchasing ArchAngel's products," but it introduces no evidence to this effect beyond this single cease-and-desist letter.

Freudenberg engaged in the subsequent negotiations on behalf of Absolute. ArchAngel, however, offers no evidence to support this claim.

After the negotiations fell apart, ArchAngel filed this suit, seeking a declaratory judgment that the Door Devil does not infringe the '635 Patent. Defendants now move to dismiss the case under Federal Rule of Civil Procedure 12(b)(2), contending that this Court lacks personal jurisdiction over all three defendants.

## II. THE FEDERAL CIRCUIT'S STANDARD FOR DISMISSAL OF PATENT CASES UNDER RULE 12(B)(2)

In determining whether it may exercise personal jurisdiction over a nonresident defendant for patent claims, a district court applies Federal Circuit law. *See Taylor v. Ishida Co., Ltd.*, No. 3:02-CV-0402-D, 2002 WL 1268028, at *2 (N.D. Tex. 2002) (citing *Hildebrand v. Steck Mfg. Co.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002)); *see also Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1361 (Fed. Cir. 2006).

When a nonresident defendant moves to dismiss a case for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident. *See Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001). The plaintiff's burden depends on the case's procedural posture. If the parties have not conducted jurisdictional discovery, the plaintiff need make only a prima facie showing of jurisdiction, and the court resolves all factual disputes in the plaintiff's favor and accepts uncontroverted allegations in the complaint as true. *See Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010) (citing *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1282 (Fed. Cir. 2005); *Deprenyl Animal Health, Inc. v. Univ.*

*of Toronto Innovations Found.*, 297 F.3d 1343, 1347 (Fed. Cir. 2002)). If the parties have conducted jurisdictional discovery, however, the plaintiff must establish jurisdiction by a preponderance of the evidence. *See Pieczenik v. Dyax Corp.*, 265 F.3d 1329, 1334 (Fed. Cir. 2001). In this case, the Court, at ArchAngel's request, issued an order that permitted the parties to conduct jurisdictional discovery and stayed all other matters in the case. Order, May 8, 2012 [14]. It allowed ArchAngel approximately two months from the date of the order to file a supplemental response to Absolute's motion to dismiss. ArchAngel, however, did not file a supplemental brief. Since the Court allowed jurisdictional discovery, even though ArchAngel did not take full advantage of it, the Court holds ArchAngel to the higher of the two evidentiary standards and requires that it establish jurisdiction by a preponderance of the evidence. The result the Court reaches would be the same, however, under either analysis.

Personal jurisdiction over an out-of-state defendant involves two inquiries: (1) whether the forum state's long-arm statute permits service of process, and (2) whether the assertion of personal jurisdiction would violate federal due process. *See Nuance Commc'ns*, 626 F.3d at 1230. A nonresident defendant is subject to the personal jurisdiction of a federal court to the same extent that the defendant would be amenable to the jurisdiction of a state court in the same forum. *See LSI Indus. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1371 (Fed. Cir. 2000) ("We defer to a state's highest court to interpret whether a defendant is amenable to process in the forum state."); *Taylor*, 2002 WL 1268028, at *2 ("The court first decides whether the defendant is amenable to process in the forum state."). This Court, therefore,

must apply Texas law to ascertain if Texas may assert long-arm jurisdiction over Defendants. The Texas long-arm statute confers jurisdiction to the limits of the federal Constitution. *See Trinity Indus., Inc. v. Myers & Assocs., Ltd.*, 41 F.3d 229, 230 (5th Cir. 1995); *Hall v. Helicopteros Nacionales de Colombia, S.A.*, 638 S.W.2d 870, 872 (Tex. 1982), *rev'd on other grounds*, 466 U.S. 408 (1984). The Court, therefore, need concern itself only with the federal due process inquiry. *See Taylor*, 2002 WL 1268028, at *2.

Due process requires the satisfaction of two elements for a court to exercise personal jurisdiction over a nonresident defendant: (1) the defendant must have some minimum contacts with the forum that result from an affirmative act on its part such that the defendant could anticipate being haled into the forum state's courts of the forum state, and (2) it must be fair and reasonable to require the nonresident to defend the suit in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-77 (1985). The due process clause ensures that persons have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Id.* at 472 (citing *Shaffer v. Heitner*, 433 U.S. 186, 218, (1977) (Stevens, J., concurring) (alteration in original)).

To establish minimum contacts, a nonresident defendant must do some act by which it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). A resident's unilateral assertion of a relationship with the nonresident defendant does not satisfy this requirement. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980) (quoting


*Hanson*, 357 U.S. at 253). In determining whether the exercise of jurisdiction is appropriate, the Supreme Court has considered whether a defendant's contacts with the forum make it reasonable to require the defendant to defend the particular suit in that forum. *Shaffer*, 433 U.S. at 203. A court can exercise personal jurisdiction in three different ways in the Federal Circuit: specific jurisdiction, general jurisdiction, and personal jurisdiction under the stream-of-commerce theory.[3]

### A. *Specific Jurisdiction*

Specific jurisdiction exists if (1) the cause of action is related to or arises out of the defendant's contacts with the forum, and (2) those contacts meet the due process standard. *See Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009) (citing *Burger King*, 471 U.S. at 472-73). Specific jurisdiction entails a three-part test: (1) whether the defendant purposefully directed activities at the forum's residents,

---

[3]Some circuit courts have held that the stream-of-commerce theory is a means of establishing specific, but not general, personal jurisdiction. *E.g.*, *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 788-89 (7th Cir. 2003); *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 216 (5th Cir. 2000); *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 203 (3d Cir. 1998). The Federal Circuit, too, has noted this distinction. *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1331 (Fed. Cir. 2008) (observing that "it remains unclear whether contacts based solely on the "stream of commerce" theory may suffice to establish general jurisdiction"). It has also, however, treated the stream-of-commerce theory as a means of establishing personal jurisdiction without resorting to the "specific" and "general" labels. *E.g.*, *Viam*, 84 F.3d at 427-28 (finding general/specific distinction "not useful here" and concluding that stream-of-commerce theory is "[t]he analytical tool useful in cases in which the defendant's contacts are the result of establishing a distribution network in the forum State for the sale of defendant's products"). Though this discrepancy may ultimately amount to a distinction without a difference, the Court, in keeping with *Viam*, addresses the stream-of-commerce theory as a freestanding means of establishing personal jurisdiction rather than as a subset of specific jurisdiction.

(2) whether the claim arises out of or relates to those activities, and (3) whether assertion of personal jurisdiction is reasonable and fair. *AFTG–TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1361 (Fed. Cir. 2012) (citing *Nuance Commc'ns*, 626 F.3d at 1231).

A plaintiff in a patent declaratory judgment case cannot rely on a cease-and-desist letter to establish that a plaintiff purposefully directed activities at the forum state. Rather, "[f]or the exercise of personal jurisdiction to comport with fair play and substantial justice, there must be 'other activities' directed at the forum *and related to the cause of action* besides the letters threatening an infringement suit." *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1333 (Fed. Cir. 2008) (quoting *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1202 (Fed. Cir. 2003) (alteration and emphasis in original). These "other activities" must "relate to the *enforcement* or the *defense of the validity* of the relevant patents." *Id.* at 1334 (emphasis in original). Qualifying activities include judicial and extrajudicial patent enforcement efforts in the forum state as well as "entering into an *exclusive* license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum." *Id.* (collecting cases) (emphasis added).

### B. General Jurisdiction

A court may have general jurisdiction where the claim is unrelated to the nonresident's contacts with the forum, but where those contacts are "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. 408, 415 (1984) (citations omitted); *see also LSI*, 232 F.3d at 1375. Given this standard, a plaintiff asserting general

personal jurisdiction has a higher burden than one asserting specific personal jurisdiction. *Avocent*, 552 F.3d at 1330.

### C. Stream-of-Commerce Theory

The Federal Circuit also on occasion analyzes whether sufficient minimum contacts exist to find personal jurisdiction using the "stream-of-commerce" theory. *Viam Corp. v. Iowa Exp.-Imp. Trading Co.*, 84 F.3d 424, 427 (Fed. Cir. 1996) (citing *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994)). The precise contours of the stream-of-commerce theory are difficult to ascertain. In its most recent analysis of the issue, the Supreme Court left open a longstanding split as to the theory's application. *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011). Specifically, it is not clear whether a defendant is subject to personal jurisdiction in the forum state merely because it placed a product in the stream of commerce and that product reached the state, or whether an additional action by the defendant demonstrating purposeful direction toward the state is required. *Compare Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cnty*, 480 U.S. 102, 112 (1987) *with id.* at 117 (Brennan, J., concurring in part and concurring in judgment). The Federal Circuit has expressly declined to take a position on the question. *AFTG-TG*, 689 F.3d at 1365. Instead, it "has assessed personal jurisdiction premised on the stream-of-commerce theory on a case-by-case basis by inquiring whether the particular facts of a case support the exercise of personal jurisdiction." *Id.* at 1362. The Court thus adopts such a fact-driven approach in this case, though it is hampered in these efforts by the lack of briefing informed by jurisdictional discovery.

### III. THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER ANY DEFENDANT IN THIS CASE

ArchAngel asserts that the Defendants are all subject to the Court's personal jurisdiction. Specifically, it maintains that the Court has (1) specific jurisdiction, general jurisdiction, and jurisdiction under the stream-of-commerce theory over Absolute; (2) specific jurisdiction and jurisdiction under the stream-of-commerce theory over Canerdy; and (3) jurisdiction over Freudenberg based on its jurisdiction over Absolute and the fact that Absolute is Freudenberg's "alter ego."

#### A. *The Court Does Not Have Jurisdiction over Absolute*

***1. Specific Jurisdiction.*** – To prove that the court has specific jurisdiction over Absolute, ArchAngel must demonstrate that Absolute (1) sent ArchAngel the cease-and-demand letter and (2) engaged in "other activities" directed at Texas and related to the cause of action. *See Avocent*, 552 F.3d at 1333. Absolute sent an infringement demand letter to ArchAngel in Texas, but it did not engage in other qualifying activities. The cease-and-desist letter to the Rhode Island company does not meet the requirements because that activity was directed toward Rhode Island, not Texas. Moreover, Absolute's sales in Texas do not rise to the level of specific-jurisdiction-granting "other activities" contemplated by the Federal Circuit. *See Avocent*, 552 F.3d at 1336 ("[A] defendant patentee's mere acts of making, using, offering to sell, selling, or importing products – whether covered by the relevant patent(s) or not – do not . . . constitute such 'other activities' as will support a claim of specific personal jurisdiction over a defendant patentee.").

Furthermore, Absolute's cease-and-desist letter and the ensuing negotiations do not constitute minimum contacts under a specific-jurisdiction analysis. In *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, the Federal Circuit determined that a nonresident defendant in a declaratory patent action was not subject to the district court's specific jurisdiction even though the defendant had sent the plaintiff three cease-and-desist letters that included offers to license the patent in question, and even though the defendant already had thirty-four licensees in the forum state. 148 F.3d 1355, 1360-61 (Fed. Cir. 1998). The Federal Circuit noted that "[a]n offer to license is more closely akin to an offer for settlement of a disputed claim rather than an arms-length negotiation in anticipation of a long-term continuing business relationship." *Id.* at 1361 (citing *Burger King*, 471 U.S. at 479); *see also Envision Gaming Techs., Inc. v. Infinity Grp., Inc.*, No. 3:05-CV-0902-L, 2006 WL 2623929, at *6 (N.D. Tex. Sept. 12, 2006) (no specific jurisdiction where parties "had no prior contacts or ongoing business relationship that terminated with threats of litigation"). If Absolute and ArchAngel had had a prior business relationship before the patent dispute began, ArchAngel would have a stronger argument that Absolute had sufficient contacts with Texas to result in specific jurisdiction. *See Inamed*, 249 F.3d at 1362 (reversing district court's dismissal for lack of personal jurisdiction where defendant and plaintiff had four license agreements prior to patent dispute). In this case, however, the negotiations following the cease-and-desist letter do not support a claim of specific jurisdiction, as they were just an attempt to resolve a dispute between two companies with no previous connection. Accordingly, because Absolute did not engage in activities beyond the cease-and-desist letter that were directed at

Texas and are related to this cause of action, the Court has no specific jurisdiction over Absolute.

*2. General Jurisdiction.* – To prove the Court has general jurisdiction over Absolute, ArchAngel must demonstrate that Absolute's contacts with Texas were "continuous and systematic." *Helicopteros Nacionales*, 466 U.S. at 415. As neither the Supreme Court nor the Federal Circuit has articulated a specific test for determining whether a defendant's activities are continuous and systematic, "a court must look at the facts of each case to make such a determination." *LSI*, 232 F.3d at 1375.

In this case, the Court notes several factors: (1) Texas dealer H.L. Flake's five purchases of products covered by the '635 Patent over the past two years, (2) Absolute's sales of the Jamb Enforcer to several Texas residents, and (3) Absolute's website, which can be accessed from Texas. Even when considered in sum, however, these contacts are not systematic and continuous. H.L. Flake's purchases are irregular and are not governed by an ongoing contract or license agreement. Based on the parties' filings, only a very small number of consumers have purchased Jamb Enforcers directly from Absolute. And Absolute's website is passive rather than active: it provides information about Absolute's products but offers no interactive opportunity to buy them. *See Am. Eyewear, Inc. v. Peeper's Sunglasses & Accessories, Inc.*, 106 F. Supp. 2d 895, 900-01 (N.D. Tex. 2000) (discussing active sites, passive sites, and sites in the middle ground between them). Absolute's site includes information and a video about the Jamb Enforcer, a list of Jamb Enforcer dealers, and Absolute's contact information. *See* Defs.' Reply Br., Ex. 1 [13-1].

The site, however, does not allow prospective buyers to purchase Jamb Enforcers directly. "A passive website is insufficient to establish purposeful availment for the purpose of due process." *Marynard v. Phila. Cervical Collar Co., Inc.*, 18 F. App'x 814, 816-17 (Fed. Cir. 2001) (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419-20 (9th Cir. 1997); *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336-337 (5th Cir. 1999)); *accord McZeal v. Fastmobile, Inc.*, 219 F. App'x 988 (Fed. Cir. 2007) (affirming district court's dismissal of case for lack of personal jurisdiction where court found defendant's website to be passive). Moreover, Absolute is not registered to conduct business in Texas, does not have a registered agent in Texas, and has no facilities, assets, employees, or agents in Texas. Given all of these factors, the Court concludes that Absolute's contacts with Texas are not continuous and systematic. The Court thus has no general jurisdiction over Absolute.

    ***3. Stream-of-Commerce Theory.*** – ArchAngel contends that Absolute's sales in Texas are sufficient to subject Absolute to the Court's jurisdiction under the stream-of-commerce theory. This argument, too, is unavailing.

    The connections with the forum state in this case differ from the connections by nonresident defendants in cases in which the Federal Circuit has found personal jurisdiction under the stream-of-commerce theory. In *Beverly Hills Fan*, for instance, the Federal Circuit found jurisdiction where a foreign defendant shipped allegedly infringing products to the forum state through "an established distribution channel" and where "[t]he cause of action for patent infringement is alleged to arise out of these activities." 21 F.3d at 1565. Neither of these factors is present here. First, H.L. Flake's purchase of 5 shipments of Jamb

Enforcers does not constitute an established distribution channel, not least because there is no ongoing contract between Absolute and H.L. Flake. And Absolute's handful of sales of the Jamb Enforcer to Texas residents are even less of an established channel. Second, and even more critically, the cause of action in this case does not arise out of Absolute's shipments to Texas. *Beverly Hills Fan* was a patent infringement action, in which the nonresident defendant was the alleged infringer; this is a declaratory patent action, in which the nonresident defendant is the patent holder. The distinction is critical, since in the former sort of case the sale of the infringing product in the forum state gives rise to the plaintiff's complaint, whereas in the latter the dispute arises from the patent holder's attempts to enforce its patent. *See AFTG-TG*, 689 F.3d at 1365 (noting that cause of action in declaratory actions does not arise out of defendant's shipments into putative forum state).

In some cases, a defendant in a declaratory patent action may be subject to a court's personal jurisdiction based on the stream-of-commerce theory. In *Viam*, for example, the Federal Circuit determined that the defendant had sufficient contacts to support a finding of jurisdiction when the defendant had an exclusive licensing agreement with another company, the defendant established a regular distribution channel into the state, the distributor's sales director talked to the defendant regularly, the defendant's sales in the forum totaled $2.4 million the year before the suit was filed, and the defendant itself had previously initiated a patent enforcement suit in the same district court. *Viam*, 84 F.3d at 428-29; *see also Avocent*, 552 F.3d at 1338-39 (noting significance to stream-of-commerce analysis of defendant's enforcement action in same forum). The contacts between Defendants and Texas in this case

are far more attenuated than those in *Viam*, however. Particularly critical is the lack of evidence that Absolute has ever availed itself of state or federal court in Texas to enforce its patent or for any other reason. Absolute's contacts with Texas effectively boil down to the cease-and-desist letter and some limited sales of its products. These contacts are insufficient to support a finding of personal jurisdiction, even under a stream-of-commerce analysis.

ArchAngel, in sum, cannot establish that the Court has specific jurisdiction, general jurisdiction, or jurisdiction under the stream-of-commerce theory over Absolute.

### B. The Court Does Not Have Jurisdiction over Canerdy

*1. Specific Jurisdiction.* – The Court lacks specific jurisdiction over Canerdy for substantially the same reasons it lacks specific jurisdiction over Absolute. ArchAngel believes Canerdy is subject to the Court's specific jurisdiction and personal jurisdiction under the stream-of-commerce theory because of the sales of products covered by the '635 Patent in Texas. ArchAngel asserts – but points to no evidence to prove – that Canerdy licenses the '635 Patent to Absolute and that Canerdy, Absolute, and Freudenberg cooperate to sell and distribute in Texas products covered by the '635 Patent. Canerdy, even if all of Absolute's actions, including the cease-and-desist letter, can be imputed to him, did not engage in "other activities" outside the cease-and-desist letter that can support a finding of specific jurisdiction. [4]

---

[4]The Court further notes that Canerdy's connections with the state are not sufficiently continuous and systematic as to give rise to general personal jurisdiction, either.

Because Absolute's sales are not sufficient to establish minimum contacts with Texas, this Court does not have personal jurisdiction over Canerdy.[5]

### C. *The Court Does Not Have Jurisdiction over Freudenberg*

Absolute contends that the Court has personal jurisdiction over Freudenberg because Absolute is allegedly Freudenberg's alter ego. "While the general rule is that jurisdiction over an individual cannot be predicated upon jurisdiction over a corporation, courts have recognized an exception to this rule when the corporation is the alter ego of the individual." *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985). ArchAngel, however, has not provided the Court with evidence sufficient to conclude that Absolute is indeed Freudenberg's alter ego. Moreover, even if it had, the Court does not have personal jurisdiction over Absolute, so it does not have personal jurisdiction over Freudenberg, either.

### CONCLUSION

The Court does not have personal jurisdiction over Defendants, whether under specific, general, or stream-of-commerce analyses. Accordingly, the Court grants Defendants' motion and dismisses this case without prejudice.

---

[5] Defendants contend that Canerdy is an essential party to this case and that, because the Court does not have personal jurisdiction over Canerdy, the Court must dismiss the case. Because the Court has no personal jurisdiction over any defendant, however, the Court need not reach this argument.

Signed November 14, 2012.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 16